GEORGE H. SMITH AND ELOISE HIS WIFE *vs.* MARTHA YOUNG.—*December,* 1847.

Under the act of 1798, ch. 101, sub ch. 15, sec. 17, either party may apply to the Orphans court for issues to be sent to the county court, if there be any matters properly in issue between the parties to a contest upon plenary proceedings.

Whether there are any such matters in issue, the court will determine as a question of law.

No person by vows of any description, can exempt himself from any of the duties which the State may require of him, nor forfeit any of the rights of citizens, which, but for the vows, would have belonged to him.

Upon an application for letters of administration, the Orphans court can only regard the party making them as any other citizen, notwithstanding such party may have voluntarily taken upon himself vows of seclusion from the world.

The party applying for administration, and not the Orphans court, is to judge whether he can, consistently with vows he may have taken, discharge the duties of administrator.

The law requires of all who administer upon the estate of a deceased person, bond with ample security for the faithful performance of the duties they undertake.

Of the religious or other engagements of such parties, the Orphans court need not be informed, and issues designed only to give such information, ought not to be framed and sent to a county court.

By the act of 1798, ch. 101, sub ch. 5, sec. 19, it is declared, that in the grant of letters of administration "a *feme sole* shall be preferred to a married woman

in equal degree." This rule is applicable to the children of the intestate, and is not to be connected exclusively with those sections of that sub chapter, which relate to the grant of letters to collaterals.

In the cases spoken of in the 10th and 23d sections of sub ch. 5, 1798, ch. 101, administration is to be granted in the discretion of the Orphans court.

The 10th sec. relates to cases where there is a widow and a child.

An intestate left no widow, a son, minor children, and a married and an unmarried daughter. The son was disqualified; and as between the daughters, the unmarried is to be preferred to the married daughter, in the grant of letters of administration upon the father's estate.

APPEAL from the Orphans Court of *Prince George's* County.

The appellants on the 8th May, 1847, filed their petition, alleging that *Notley Young*, late of *Prince George's* county, deceased, died sometime in or about the month of July, 1846, intestate, leaving your petitioner, *Eloise, Martha Young, Benjamin F. Young*, and two minor children, to wit, *Clement* and *Julia*, his only children and heirs-at-law. That a certain paper purporting to be the last will and testament of said *Notley*, was offered for probat in this court, as and for the last will and testament of said *Notley*; but a *caveat* being filed by your petitioners, against the said pretended last will, this Honorable court directed issues for trying the validity of said pretended will, to be sent to the county court of *Prince George's* county; and at the April term of said court, just passed, the said *caveat* was in all things sustained, and the said issues were decided by the court and jury, against the validity of said will, all of which will more fully appear by reference to the record of said *caveat* and issues, now in this court remaining upon *procedendo* from said county court; that in consequence of the setting aside of said pretended will, it will become necessary for this court to grant letters of administration on the personal estate of the said *Notley Young*, to some person or persons who are entitled and qualified by law to administer thereon; that the said *Benjamin F. Young* is the only male child of the said *Notley*, of full age, who by law is entitled to the said administration; but in reference to the said *Benjamin*, your petitioners aver that he is disqualified, from total blindness and deafness, and from physical infirmity, from discharging the

duties of said office; and upon being properly summoned before this court, your petitioners aver that the said *Benjamin* will renounce his right to said administration; that they have been informed that the said *Martha*, who is the only unmarried female child of said *Notley* of full age, claims the right of administration over your petitioner *Eloise*, and intends making her application to this court for letters of administration on the said *Notley's* personal estate; but in reference to said *Martha*, your petitioners aver and charge that she is now, and has been for many years, *a nun* in the convent at *Georgetown*, in the *District of Columbia*, having taken the black veil, and an oath or vow of total and perpetual seclusion from the world, and renounced all participation in the secular pursuits of the same. That by reason of said vow and oath, she has disqualified herself from acting as such administratrix; and that she is now residing permanently in a foreign jurisdiction, and an inmate for life of a nunnery, and cannot be subjected or made amenable by any process known to the law, to the jurisdiction of this court, or made to obey the process thereof. That the said *Martha* has renounced her rights to administer on the said estate, if she ever had any, by reason of her said monastic vows; and is now estopped by her own acts from claiming such right, if any she ever had. Your petitioners therefore claim that administration rightfully belongs to your petitioner *Eloise*, who is of full age and in all respects able and qualified to administer on the estate of her said father. *Prayer* for summons and grant of letters, &c.

On the 8th May, 1847, the appellee also filed a petition, praying for letters of administration on her father's estate; and on the 19th May, she appeared in court, filed her answer to the petition of the appellants, in which she admitted all the allegations of the petitioners, which did not relate to herself, and in relation to herself she alleged that for several years past she has been, and now is one of the " *Sisters of the Visitation*," an association of ladies for the objects of religion, education and charity; and who were incorporated by an act of Congress of the United States, as far back as the year 1828; and that as one

of the said sisterhood, she has, since becoming a member thereof, always resided at the *Convent of the Visitation*, near *Georgetown*, in the *District of Columbia*, and beyond the limits of the *State of Maryland*; and that according to the rules and regulations of the sisterhood, she has in uniting herself with the same, become a nun, and has taken the black veil; and she admits also, that it was her engagement, and is her present purpose to continue permanently during her life, as a member of the said institution, and as such, to remain an inmate of said convent, unless she shall hereafter be called on to remove to some other establishment of the sisterhood, of which there are several, as well in, as out of the *State of Maryland*. But respondent further saith and averreth, that the petitioners have greatly erred in their statement of the scope, character, and obligation of the engagement that this respondent has entered into as a nun and member of the association aforesaid: and she saith, that as such nun and member, she has not been required to take, nor has she taken any oath whatever; that the only vow or engagement that she has entered into, has been of a purely religious character, and is well understood by herself and the sisterhood, to impose no legal restraint or obligation of any kind; so that she may, if so disposed, at any time sever her connection with the sisterhood, and withdraw entirely and permanently from the convent, without any hindrance or restraint whatever; and of this course, there have been repeated instances on the part of other sisters entering into precisely the like vows or engagements with those of this respondent. And this respondent saith, that she hath not taken, nor do the rules and regulations of the association impose on any member any vow, oath or engagement of any kind, of total and perpetual seclusion from the world: for she saith, that although the avocations of the sisters for the most part confine them within the limits of their respective conventional or other residences, yet instances have been, and are of frequent occurrence, in which, in entire consistency with their vows or engagements, they go beyond those limits into the world, on the business of the institution, or on their own private affairs,

both in and out of courts; and in illustration of this, she saith that if letters of administration on the estate of the deceased shall be awarded to her, she will be prepared to attend personally before this Honorable court, for the purposes of qualification, settlement of accounts, and the like; and to perform all other essential duties incident to her office as administratrix, and requiring her personal attention. All which she will do without the slightest infringement of any vow or engagement of any kind, entered into by her, as a nun or sister of the *Visitation*. And she further saith, that it is equally untrue, that as a nun or otherwise, she has by any vow or engagement of any kind, renounced all participation in the secular pursuits of the world; for she saith, one chief object of the association is education; and they connect with it an active charity, extended towards those who have not the means of defraying the expenses of their education. And she saith in illustration of this, that the association have always conducted at their establishment near *Georgetown*, and now do, a flourishing boarding and day school, for pay scholars of different religious denominations; the labours of which, devolving exclusively on the nuns, may be judged of by the fact, that the number of boarders alone at present in the school, exceeds ninety, and has only lately been considerably above one hundred; and their charity school also embraces a large number, without distinction of religious faith, many of whom are fed and clothed, as well as educated. It will be readily seen, that the conduct of such schools, and the supply of the varied wants of the pupils, necessarily involve an extensive participation in the secular pursuits of the world; and respondent therefore forbears, as unnecessary, a further enumeration of secular pursuits incident to the management, preservation, and disposal of their property. And respondent in conclusion, denies that she renounced or forfeited by any vows, her right of administration without this, &c. &c.

The petitioners then prayed that the court would direct an issue or issues to be made up and sent to some court of law, most convenient for trying the same, in pursuance of the

provisions of the act of Assemby in such case made and provided.

The following issues were tendered to the court by the petitioners:

1st. Whether the said *Martha Young* is, or is not, a resident of the State of *Maryland.*

2d. Whether the said *Martha Young* is, or is not, a professed nun in the monastery at *Georgetown*, in the *District of Columbia*, and an inmate thereof for the term of her natural life.

3d. Whether the said *Martha Young* has, or has not, taken a vow or engagement of perpetual seclusion from the world, and of renunciation of all participation in the secular pursuits of the world, and thereby become incapable of acting as administratrix on the personal estate of *Notley Young*, deceased.

4th. Whether the said *Martha · Young* has, or has not, renounced her right of administration on the personal estate of *Notley Young*, deceased.

5th. Whether the said *Martha Young* is, or is not, estopped from all claim or right to administration on the said personal estate of *Notley Young*, deceased.

6th. Whether the said *Martha Young* is, or is not, capable of performing in person, the duties of administratrix of said *Notley Young's* personal estate, without the consent of the *Archbishop of Baltimore*, or some other authority in the *Roman Catholic Church.*

7th. Whether the said *Martha Young* is entitled to administration on the personal estate of said *Notley Young*, as against her sister, *Eloise Smith*, the wife of *George H. Smith.*

8. Whether the said *Benjamin F. Young* is physically or otherwise incapable of administering on the said *Notley Young's* personal estate.

In connexion with the foregoing petition, the parties by their counsel, filed an agreement in writing of the tenor and words following, to wit:

· "It is admitted by *George Henry Smith and wife*, and *Martha Young*, that *Benjamin F. Young* is incapable of performing the office of administrator on the estate of *Notley Young*, de-

ceased, for the reasons stated in the petition. And they also agree, that the Orphans court may consider the application of said *Smith and wife*, for issues to be sent to a court of law, and for letters of administration on said *Notley Young's* estate, by them or by *Martha Young*, in the same manner and to the same extent, as if his incompetency were judicially established, without prejudice to the rights of said *B. F. Young*, and subject to the right of either party to appeal."

On the 25th May, 1847, the Orphans court, DUCKETT, C. J., MARSHALL and HILL, A. J., overruled the prayer for issues to a court of law, upon the ground that some of them were immaterial; others related to questions of law, and to facts admitted by the petition and answer, and decreed that *Martha Young* was entitled to letters of administration upon her father's estate. The petitioners appealed to this court.

The cause was argued before ARCHER, C. J., DORSEY, CHAMBERS, MAGRUDER and MARTIN, J.

By BOWIE and TUCK for the appellants, and

By SEMMES and BRENT for the appellee.

MAGRUDER, J., delivered the opinion of this court.

It appears in this case, that the late *Notley Young* of *Prince George's* county, died in July, 1846, intestate, and leaving no widow. Besides two infant children he left a son, *Benjamin*, the appellant, *Eloise*, who had married the other appellant, and the appellee. The appellants by their petition applied to the Orphans court of *Prince George's* county, for letters of administration to be granted to the appellant *Eloise*, or to both the petitioners, and to the exclusion of the appellee. This claim is upon the ground that the latter "is, and has been for many years a nun in the convent at *Georgetown*, in the *District of Columbia*, a foreign jurisdiction; having taken the black veil, and an oath or vow of total and perpetual seclusion from the world, and renounced all participation in the secular pursuits of the same." By reason of this, it is alleged that she is disqualified from acting as administratrix.

Pending this petition, the petitioners applied for issues to be sent to a county court. This application was rejected, and the above petition of the appellants was dismissed; letters of administration it seems, were ordered to be granted to the appellee. But of this the appellants are not the persons to complain, if they have no title to the administration. It is unnecessary therefore to notice anything which is said of *Benjamin*, the son of the intestate.

With respect to the application for issues to be sent to a county court, the act of Assembly authorizes either party to apply for them, if there be any matters properly in issue between the parties; the question in this case is, whether there are any such matters in issue?

It is the opinion of this court, that the court below had no power to refuse letters of administration to the appellee, for the reasons suggested by the appellants in their petition. Neither by the vows spoken of, nor by vows of any description, can the parties making them, exempt themselves from any of the duties which the State might have required of them, or forfeit any of the rights which would have belonged to them as citizens *but* for the vows. Every thing stated in the petition by the appellants may be true, and yet the appellee does not subject herself to any pain, penalty, or disability, although it could be proved, that by her application for letters of administration, the appellee had violated the ordinances, and subjected herself to the discipline of the Church, of which she is a member; still in the Orphans court, and upon this application, she can only be regarded as an unmarried daughter of the intestate.

It has been argued, that although the law may not in express words deny to the appellee letters of administration on this estate, yet the vows which she has taken render her incapable of discharging the duties of administratrix.

The answer to this is that the appellee herself, and not the court, is to judge whether she can consistently with her vows, discharge those duties. The law requires of all who administer upon the estate of a deceased person, bond with ample security for the faithful performance of the duties which they.

undertake.  Of their other engagements, religious, or otherwise, into which they may have previously entered, the court which is to grant the letters of administration, need not to be informed, and issues designed only to give such information, ought not to be framed and sent to a county court.

The counsel for the appellants have also insisted that although the appellee may not by her religious vows, have disqualified herself as an administratrix, yet our act of Assembly does not say that she shall be preferred to her married sister.  If not entitled to claim to the exclusion of her sister, is the claim of the appellant well founded to be associated with her in the administration upon their father's estate?  This depends upon the act of 1798, ch. 101, sub chap. 5.  The 19th section of this sub chapter does say, "a *feme sole* shall be preferred to a married woman in equal degree."  But this it is said, ought not to be applied to *children* of the intestate; it should be connected exclusively with those sections which relate to the grant of letters to collaterals.  No reason for this is perceived; this sub chapter prescribes the rules by which the Orphans court is to be governed in granting letters of administration, whether to lineals, or collaterals, relations in the ascending or descending line, males or females, females married, or unmarried, &c., of course applying to each case the rules which are applicable to it.  There can be no reason for saying that a rule like this is to be observed in the case of married and unmarried sisters, but it is to be disregarded when the persons claiming the letters are the daughters of the deceased, and certainly there are no words in the 19th section which will connect it exclusively with those sections which entitle collateral relations to the administration.  If the appellants could claim in virtue of the 10th section, then it would seem that in order to associate the husband with the wife, as authorized by the 20th section, the latter must not be a child, but a collateral relation of the intestate.  Only in the cases spoken of in the 10th and 23rd sections, is administration to be granted "at the discretion of the court."  The claim in this case of the married daughter to be united with her unmarried sister in the administration, is founded on the 10th section,

and can rest on none other in the law. But that section is confined to cases in which there is a widow, as well as a child or children, and of course does not embrace this case, in which there is no widow to be preferred at the discretion of the court to any of the children.

There is then no error in the refusal by the court below to send issues in this case to a county court, there being no matters properly in issue; and this case is like any other in which the controversy for administration upon an *intestate's* estate is between two of his daughters, one of them married, and the other unmarried. The latter is to be preferred to the former.

ORDER AFFIRMED.