Nusz *et al. vs.* Grove.

(Decided 12th July, 1867.)

---

PETER ELIAS NUSZ and others *vs.* MARY GROVE.

*Right of Administration—Effect of Separation upon the rights of the Wife—Inability to read or write, no disqualification to Administer—Contracts of Married women.*

By virtue of Article 93, section 19 of the Code of Public General Laws, if there be a widow and no child, the widow shall be preferred in the administration of the estate of the intestate.

Separation alone, does not deprive a wife of her share in her husband's estate or of her right to administer. The marriage not having been dissolved, she is still his widow.

A widow entitled under the Code, to administer upon the estate of her deceased husband, is not disqualified by her inability to read or write;

Nusz *et al. vs.* Grove.

and the Orphans' Court has no power to deprive her of that right for such cause.

A married woman is incapable of making a valid and binding contract, except as to her separate estate.

APPEAL from an order of the Orphans' Court of Frederick County.

The facts of the case are sufficiently disclosed in the opinion of the Court.

The cause was argued before BOWIE, C. J., BARTOL, WEISEL and CRAIN, J.

*John Ritchie* and *Wm. P. Maulsby*, for the appellants, argued:

That by virtue of the contract entered into between the appellee and her husband, whereby it was agreed that he would pay to a certain W. H. Dangerfield, for her use, the sum of $450, and that she would forego all claim for a separate support and maintenance, and all claim or right of dower which she might or could have or prefer against his estate, after his death, the appellee has now no claim, as the widow of her deceased husband. While, by the common law, husband and wife are incapable of contracting with each other, that general principle has been essentially modified by modern decisions, (the law being progressively liberalizing in this respect,) as to a wife's separate estate, and as to those rights of property she acquires by virtue of her marriage, which enure to her exclusive benefit, and partake substantially of the nature of a separate estate. It is therefore maintained that a post-nuptial contract may be entered into by a husband for the transfer of property to his wife for a *bona fide* and valuable consideration coming from her, which will be enforced, and that the rights of property she acquires in his estate, by virtue of her marriage, will furnish such consideration. *Bowie vs. Stonestreet et al.,* 6

*Md. Rep.,* 418 ; *Jones, Adm'r, vs. Jones and Wife et al.,* 18 *Md. Rep.,* 464 ; 2 *Kent's Com.,* 166, 174 ; *Cord on Rights of Married Women,* 43, &c.

If this be so, then, from the evidence, the appellee has parted with all her interest or claim as widow, in and to the estate of her husband, and is no longer entitled to any portion thereof, real or personal. If not so entitled the second proposition of the appellants is, that letters of administration will not be granted to any one not interested in the decedent's personal estate. In other words, that "it is an established principle that the right to the administration of the effects of an intestate follows the right to the property in them." 1 *Williams on Executors,* 343, 359, 360 ; *Hoffman vs. Gold,* 8 *G. & J.,* 84 ; *Young, Adm'r of Young, Ex parte,* 8 *Gill,* 286 ; *Maurer vs. Naill et al.,* 5 *Md. Rep.,* 325 ; *Edelen vs. Edelen,* 11 *Md. Rep.,* 415.

The point decided in *Cook vs. Carr,* 19 *Md. Rep.,* 1, is a different one from that here involved, and the decision therein made does not conflict with the aforegoing authorities. It may be said that the cases referred to in *5th and 11th Md. Reps.* arose upon ante-nuptial agreements ; but the decisions in those cases, denying letters of administration to the widow, were based distinctly on the ground that she had relinquished all her interest by virtue of her marriage in the estate of her husband. The simple fact of holding the relation of widow, and not being within the disqualifications mentioned in the Code, does not of itself establish an absolute and indefeasible right to letters of administration. The case of *Cook vs. Carr,* 19 *Md. Rep.,* 1, decides merely that the Orphans' Court has no discretion as to the *order* in which persons claiming administration shall be entitled, but does not relieve the applicants from the necessity of being in succession or turn possessed of the proper qualifications, and freed from the disabilities, whatever they may be, defined by the law. In the case of *Cook vs. Carr* only the particular

çause therein alleged, as amounting to a disqualification, was pronounced not to be such.

The restrictions of the Code on this subject are in the spirit of precaution, and while it is declared that no one laboring under the disabilities therein enumerated, shall be entitled to administration, by fair intendment looking to the object, other causes for disqualification are not designed to be ignored, especially when, from their return, they may confessedly be as destructive to the interests of the estate, and inimical to the rights of those entitled thereto, which it is the especial and primary duty and design of Orphans' Courts to protect, as those causes of disability expressed in the Code. The statutory provision is to subserve the spirit of vigilance as to the fitness of persons seeking the custody of the estate. The principles of law which govern our Orphans' Courts in the administration of estates are mainly drawn from the rulings and practice of the ecclesiastical Courts of England, which look to the substantial fitness or substantial unsuitability of the applicant for letters; and the restrictions of the Code are conceived in the same spirit of watchfulness for the care of the estate observed by those tribunals, and should be regarded as disqualifications made peremptory and absolute, and outside any discretion from abundant caution, while other circumstances recognized as disabling, or that may disqualify, are committed, with their various degrees, of weight, to the wisdom and discrimination of the Court. The interest of the estate being an essential consideration, it necessitates circumspection as to the fitness of the applicant, and any disqualification that would operate to its injury should be weighed. *Conyers vs. Kitson,* 3 *Haggard,* 556; *Lambell vs. Lambell,* 3 *Haggard,* 568; 1 *Wms. on Exrs.,* 343, 351.

The appellants offer as a further objection to the granting of letters to the appellee, that, in that event, she would acquire the custody of the written evidence that

Nusz *et al. vs.* Grove.

shows her not to be entitled to any portion of her husband's estate, which would be in contravention of the principle that in appointing an administrator, it is the duty of the Court to place the administration in the hands of a person *likely* to convert it to the advantage of those having claims as creditors or distributees. 1 *Wms. on Exrs.*, 351.

For the same reason, the appellee's want of business capacity and ignorance of penmanship, shown by the appellee's answer below, is an objection to her appointment, especially as assets of the estate to the amount of $10,000 are in written evidences of debt. In the settlement of such an estate, and for the discharge of the necessary duty of giving and receiving acquittances, and preparing accounts for the information of the Court, a knowledge of the art of writing, especially in this age, seems indispensable. 1 *Wms. on Exrs.*, 353.

It is no answer, we submit, to the last objection, that an agent *may* be appointed, or rather, as in the present case, *must* be appointed to act for the administratrix, if the appellee should succeed; for the Court is assuredly bound to first determine an applicant's claim to administer on *his own* right and qualifications, and not in view of *the possibility*, there being no objection, that some person, it may be unknown, may be selected by the administrator to substantially occupy the office, and supply his want of capacity; in effect become the administrator, and be, in substance, the recipient of the appointment of the Court. The law does not primarily contemplate a substitute for its own appointee. The provision of the Code in regard to agency in administration, merely secures to the Court, if it comes to their knowledge that their administrator has in fact appointed an agent, the power to subject such agent to examination under oath touching his transactions; which is evidently designed as a check upon the administrator and a protection to the estate. *Code of Pub. Gen. Laws, Art.* 93, *sec.* 7.

Moreover, the appointment of an administrator, contemplating and recognising, at the time of his appointment, the necessity for the selection by him of an agent to perform the duties of his office, amounts in substance to a "delegation of the administration," which is not allowable under the decision in *Hoffman vs. Gold*, 8 *G. & J.*, 84. In conclusion the appellants submit, that the law cannot be so inequitable that a wife, who has voluntarily left her husband; received from him what is conceded to have been at the time an adequate consideration for her express agreement to relinquish all claim whatsoever on her husband's estate; remain away from him for thirty-five years, performing none of the duties or services of a wife, and then, at his death, possess the identical interest in his property, made valuable and accumulated without her aid, and the right to administer thereon as if she had received nothing, and had always been a faithful and industrious wife.

*William J. Ross*, for the appellee.

The widow, in case the husband dies intestate, without child or children, is entitled as a matter of right to administration, and the Orphans' Court have no discretion to refuse granting her letters as between herself and the next of kin, other than child or children. *Code of Public General Laws, Article* 93, *section* 19. By the section referred to, she is preferred to all others next of kin, and if preferred, when her right is opposed by next of kin, then the Court can have no discretion, but must appoint her, if she be not disqualified from acting by the provisions of the 52 section, Article 93, Code of Public General Laws—unless she has precluded herself from participating in the personal estate by an ante-nuptial settlement. *Cook vs. Carr*, 19 *Md. Rep.*, 1.

There is no pretence that the appellee is precluded by the provisions of the 52 section of Article 93, of the Code—

and there is no evidence in the record that she is under the age of eighteen years; or of unsound mind, incapable, according to law, of making a valid deed or contract; or convict of any crime rendering her infamous according to law; or an alien.

Nor is she excluded by reason of any ante-nuptial contract. There is none such found in the record, and no such contract exists. It is admitted on her part that if she had no interest in the estate of her husband, having made an *ante-nuptial contract*, and in that contract relinquished her right to his estate by virtue of the marriage, she would have been excluded. *Ward and Wife vs. Thompson*, 6 *G. & J.*, 349; *Maurer vs. Naill et al.*, 5 *Md. Rep.*, 324.

But this principle does not apply in this case, as no such contract was ever made, or is alleged to have been made. The post-nuptial settlement referred to in the record does not exclude the appellee from her legal share of the personal estate of her deceased husband, Elias Grove, or her right to administration on his estate; as to her, the contract referred to, although made with her consent, and after marriage, is null and void, both at law and in equity. *Burton et al. vs. Marshall*, 4 *Gill*, 488; *Norris vs. Lantz & Hyde*, 18 *Md. Rep.*, 260; *Slatter vs. Slatter*, 1 *Younge & Coll.*, 28.

The points taken by the appellants in their petition are, that the appellee is excluded from her right to administration; first, in consequence of her separation from her husband, Elias Grove, and the continued separation until his death. The case of *Slatter vs. Slatter*, 1 *Younge & Collyer*, 28, sustains the proposition taken by the appellee that separation alone does not preclude the wife from her share of her husband's estate, he dying intestate; and the cases of *Lambell vs. Lambell*, 3 *Hagg*, 568; of *Davies' Estate*, 2 *Curteis*, 528; *Eccles. Rep.*, 233, and *Chappell vs. Chappell*, 3 *Curteis*, 429, are referred to as deciding the

propositon that separation, divorce *a mensa,* and living with another man as his wife, do not exclude the widow surviving, from her rights to the personal estate of her deceased husband. In the language of the Judge in *Davies'* case, "she is the widow of the intestate still, notwithstanding the separation and divorce."

In *Conyers vs. Kitson,* 3 *Haggard,* 556, the Court decided that the ordinary may appoint the widow or next of kin at his discretion. This power is derived from the Statute of 21 Henry 8, chapter 5, section 3, which provides that the ordinary shall grant letters of administration to the next of kin or the widow at his discretion. In this State, under Article 93, section 19 of the Code, the widow is *preferred,* and if *preferred,* the Court has no *discretion,* and must grant letters of administration to her. *Cook vs. Carr,* 19 *Md. Rep.,* 1. Nor will the fact that a postnuptial contract was executed between the father of the appellee, and George Feaga, and her husband, exclude her, though made with her consent. Because the authorities in *Burton vs. Marshall,* 4 *Gill,* 488, are conclusive upon this point, that no post-nuptial contract will bind the wife, except in cases where she contracts with reference to her separate estate.

It is admitted that post-nuptial contracts between husband and wife for a transfer of property from one to the other for a valuable consideration, touching the property of the wife, of which she is possessed as of a separate estate, or *sui juris,* may be enforced in equity. *Bowie vs. Stonestrect,* 6 *Md. Rep.,* 430. In *Jones, Adm'r of Horsey, vs. Jones and Wife,* 18 *Md. Rep.,* 465, the same general principle is announced, but the facts in the case show that the consideration of the contract and conveyance was an adequate consideration passing from the wife; and, under a special contract, the deed was maintained as not being fraudulent as to creditors. But these cases only decide the principle that for a valuale consideration a

wife may contract to sell her separate estate to her husband, which contract will be enforced by a bill for specific performance, and do not conflict with the principle settled in *Burton vs. Marshall*, and *Norris vs. Lantz & Hyde*, heretofore quoted.    As to her separate estate, the wife is *sui juris*, and may make any contract, conveyance or devise not prohibited by the instrument creating the separate estate.

The last point indicated by the petition of the appellants is disability to administer, because the appellee was incompetent to write or read writing.    It is respectfully submitted on this point that the only disqualifications are those prescribed by the 93d Article of the Code, section 52, and do not exist in this case, and can only be ascertained in the manner provided by the 53, 54, 55, 56 and 57 sections of Article 93 of the Code.    The ability to write or read writing does not constitute capacity to make a valid deed or contract.    The Statute of 29 Charles 2, chapter 3, as well as Article 93, sections 300 and 301 of the Code of Public General Laws, requires that all valid testamentary papers should be executed by a person of sound and disposing mind, and capable of making a valid deed or contract, and signed by the party executing the same ; and it has been held that the signature by mark was a sufficient signing.    *Redfield on the Law of Wills*, 203, *and notes; Mason vs. Harrison & Boggs,* 5 *H. & J.,* 480 ; *Baker vs. Denning,* 35 *Eng. Com. Law. Rep.,* 435.

Therefore, if under the Statute of Frauds, and under the Code, capacity to execute a valid deed or contract is a necessary ingredient to the validity of every will, and signing of the instrument be also required, and the mark of an illiterate person has been held a sufficient signing, and confers validity upon the instrument, the inference is irresistible, that the incapacity of the person applying for letters of administration to write or read writing is no evidence of incapacity to execute a valid deed or contract,

and no impediment to the granting of letters of adminis-
tration.

BARTOL, J., delivered the opinion of this Court.

This is, an appeal from an order of the Orphans' Court
of Frederick County, granting letters of administration
on the estate of Elias Grove, deceased, to the appellee, his
widow.

The deceased died without children; the appellants are
the children of his deceased sister, and claim as next
of kin.

By the Code, Art. 93, sec. 19, it is provided, " if there
be a widow and no child, the widow shall be preferred."
This case comes within this provision, and the appellee is
entitled to letters of administration; unless there be some-
thing in the proof to take the case out of the operation of
this provision of the Code. *Cook vs. Carr,* 19 *Md. Rep.,* 1.

The appellee and Elias Grove were married in Febru-
ary, 1835; a few months afterwards she separated from
him, and continued always thereafter to live in a state of
separation. The causes which led to the separation are
not disclosed in the record; but it appears both from the
petition and answer to have been by mutual consent.

The separation alone does not deprive the wife of her
share in her husband's personal estate, or her right to
administer. The marriage not having been dissolved,
she is his widow still. *Slatter vs. Slatter,* 1 *Younge & Coll.,*
*(Ex. R.,)* 28 ; *Lambell vs. Lambell,* 3 *Haggard,* 568 ; *Chap-
pell vs. Chappell,* 7 *Eccl. Rep.* 451.

The appellants contend that the post-nuptial arrange-
ment, evidenced by the bond of John Stone and George
Feaga of the 7th November, 1835, and testified to by the
witness Peter Fulrat, precludes the appellee from all
right to participate in the estate of her deceased husband,
and consequently she is not entitled to administration
under the decisions in *Ward vs. Thompson,* 6 *G. & J.,*

349 ; *Maurer vs. Naill,* 5 *Md. Rep.,* 324, *and Edelen vs. Edelen,* 11 *Md. Rep.,* 415.

But at the time that settlement was made, the appellee being a married woman, had not the capacity to make a valid and binding contract, except as to her separate estate. *Burton et al. vs. Marshall,* 4 *Gill,* 488 ; *Norris vs. Lantz & Hyde,* 18 *Md. Rep.,* 268 ; see also *Slatter vs. Slatter,* above cited. Under these decisions, the contract of the appellee must be held to be null and void, and it cannot be enforced against her, or operate to deprive her of her share in her husband's estate.

It is no legal disqualification of the appellee to administer, that she is unable to read or write.

The right of administration is conferred on her by the Code, and the Orphans' Court is not vested with the discretion to deprive her of that right, for such cause. *Cook vs. Carr,* 19 *Md. Rep.,* 1.

*Order affirmed.*

