Pollard, Adm'r *vs.* Mohler.

*Order reversed, and*
*cause remanded.*

Decided 21st January, 1881.)

JAMES POLLARD, Administrator d. b. n. of MARGARET LARSH *vs.* JULIA V. MOHLER, by her husband and next friend ISAAC W. MOHLER.

*Renunciation of the Right of Administration—Art. 93, secs.*
*17-33, of the Code—Issues to a Court of Law.*

In November, 1879, letters *d. b. n.* were granted to P. on the estate of L., fifty years after letters of administration were first granted. An inventory was in the same month returned by P. and in the following month M. petitioned the Orphans' Court, alleging that she was a grand-daughter of L. and entitled to letters, and prayed that those granted P. be revoked. P. alleged in answer, that M. and all other heirs and personal representatives had waived their rights of administration and directed him to administer, and that he had nearly completed the settlement of the estate. There was no written renunciation. P. also prayed for an issue among others, to a Court of law, as to whether M. had renounced any right she might have to administer. HELD:

1st. That M. was not entitled to have the letters granted to P. revoked.

2nd. That P. was entitled to have the issue sent to a Court of law for trial, though the question involved might have been decided by the Orphans' Court.

APPEAL from the Orphans' Court of Baltimore City.

The case is stated in the opinion of the Court.

Pollard, Adm'r *vs.* Mohler.

The cause was argued before BARTOL, C. J., MILLER, ALVEY, ROBINSON and IRVING, J.

*Charles J. Bonaparte,* for the appellant.

Nothing in the language of Art. 93, sec. 38, of the Code of 1860, (Art. 50, sec. 96, of the Revised Code,) requires this Court to hold the method of renunciation therein prescribed *exclusive* of all others. The natural reading is that it only affords *certain* means of avoiding the responsibilities of executor or administrator to one wishing to decline them. The Court *must not* appoint a person entitled who "delivers or transmits" the required declaration. *Non constat* that it *must* appoint such a person when he renounces in some other manner. And in fact, this Court has held that various other methods of renunciation or disqualification are effective. *Ward vs. Thompson,* 6 *G. & J.,* 349; *Maurer vs. Naill,* 5 *Md.,* 324; *Edelen vs. Edelen,* 11 *Md.,* 416; *Edwards vs. Bruce,* 8 *Md.,* 387; *Thornton vs. Winston,* 4 *Leigh,* 152, (*adopted* 14 *Md.,* 106, *and* 44 *Md.,* 630;) *Gaddy vs. Butler,* 3 *Munf.,* (*Va.,*) 345, (*approved* 4 *Leigh,* 152.)

If any act other than a written renunciation filed in Court can disqualify or estop the appellees from claiming the administration they are estopped here.

By their *laches* in not filing their application to revoke until December 17th, although the letters were granted on November 19th, with their full and previous knowledge, and while they resided in the City of Baltimore. *Edwards vs. Bruce, supra; Lefever vs. Lefever,* 6 *Md.,* 472; *Clagett vs. Hawkins,* 11 *Md.,* 381; *Burnley vs. Duke,* 1 *Rand.* (*Va.,*) 108.

By their further *laches* in not applying for administration *d. b. n.* during a period of well nigh fifty years. *Marr vs. Peay,* 2 *Murph.* (*N. C.,*) 85; *Stocksdale vs. Conaway,* 14 *Md.,* 99, *pages* 106, 107; *Nelson vs. Carrington,* 4 *Munf.* (*Va.,*) 332.

By their deliberate agreement not to apply, made for a valuable consideration, binding both in law and in morals, and when sought to be annulled, almost entirely executed. *Bassett vs. Miller,* 8 *Md.,* 548.

By the unquestioned principle of estoppel *in pais,* forbidding one to profit by his own wrong in repudiating the consequences of his own voluntary and intelligent action. *Bigelow on Estoppel, p.* 345 ; *Bramble, et al. vs. State, use of Twilley.* 41 *Md.,* 435 ; *Md. Fire Ins. Co. vs. Gusdorf,* 43 *Md.,* 506 ; *Nelson vs. Carrington, supra ; Burnley vs. Duke, supra.*

If the Court below was right in revoking the appellant's letters, it was because they were granted without proper notice or summons to the person or persons *best* entitled, and without his or their binding renunciation. Upon the appellee's own theory, therefore, the Court, after revoking the letters thus "inadvertently granted," should have summoned all the parties entitled to administer under the Code, and have granted letters to the one or more best entitled among them. *Thomas vs. Knighton,* 23 *Md.,* 318.

*Edward O. Hinkley,* for the appellee.

*Cook vs. Carr,* 19 *Md.,* 1, decides that the Orphans' Court *"has neither jurisdiction nor power to deprive"* one, who is entitled to administration, of that right.

In *Owings vs. Owings,* 1 *H. & G.,* 492, the Court commented on agreements for transfer of the right to administer.

The policy of our testamentary law certainly is to require a definite mode of deprivation, viz., summons or written renunciation. · *Code, Art.* 93, *secs.* 31, 33, 38; *amended by* 1874, *ch.* 402 ; *Revised Code, Art.* 50, *secs.* 91, 93, 96; 1798, *ch.* 101, *sub-ch.* 5, *secs.* 7, 23, and *sub-ch.* 14, *sec.* 1. See *Hoffman vs. Gold,* 8 *Gill & J.,* 79 ; *Carpenter vs. Jones.* 44 *Md.,* 628 ; *Nusz vs. Grove,* 27 *Md.,* 401 ;

*Kearney vs. Turner,* 28 *Md.,* 425 ; *Young, Ex parte,* 8 *Gill,* 286.

As to the right of petitioner to a day in Court, *Thomas vs. Knighton,* 23 *Md.,* 319, would seem to be quite conclusive. The argument that there may be a waiver of the right of administration, or a consent that another should act without any act in Court, is directly against Art. 50, sec. 91, of the Revised Code; and if any evidence is to be adduced to show that a party entitled is willing to decline the trust, that also must be delivered or transmitted to the Orphans' Court. It is another method of appearing in Court; but still it is "a day in Court." Nothing else will do, but a judicial sentence of deprivation of the right. The Code itself fixes the method, by which only a party may be deprived, and none other can be admitted.

The further formality of "a declaration in writing," is within the power of the legislative body to prescribe, and is intended as an additional safeguard.

ROBINSON, J., delivered the opinion of the Court.

On the 22nd of April, 1829, letters of administration were granted to Silas Larsh, on the estate of Margaret Larsh, deceased.

On the 19th of November, 1879, more than *fifty years* thereafter, letters of administration *de bonis non,* were granted to the appellant, and on the 29th of the same month, an inventory of the unadministered assets belonging to the estate was returned by the administrator *d. b. n.* to the Orphans' Court of Baltimore City.

On the 17th of December, 1879, a petition was filed in the Orphans' Court by Julia V. Mohler, the appellee, by her husband and next friend, alleging that she is a granddaughter of Margaret Larsh, deceased, and as such, entitled to letters on said estate, and praying that the letters theretofore granted to the appellant be revoked.

In reply to this petition, the appellant alleges that the said Julia V. Mohler, and all other heirs and personal repre

sentatives, agreed to waive and did waive their respective rights of administration on the estate in question, and directed him to administer on said estate, and in their place and stead to do all things pertaining to such office. That this agreement was assented to and confirmed by the husband of the appellee, and that in pursuance of said agreement, waiver and request, and for no other reason, he undertook and assumed the duties of said office, and did much labor about the same, and has now nearly completed said administration, whereby he and others have acquired rights, which may and would be lost if his letters are now revoked.

At the same time the appellant prayed that issues might be sent to a Court of law for trial, to determine among other things.

" Whether Julia V. Mohler, the appellee, has renounced or waived any right which she might otherwise have, to administer upon the estate of Margaret Larsh."

These issues the Orphans' Court declined to send to a Court of law for trial, and being of opinion that letters had been inadvertently granted to the appellant in ignorance of the right of the appellee, and without proper summons or notice to her, and without any renunciation in writing of her said right, the Court revoked the letters granted to the appellant, and granted letters to the appellee.

In thus refusing to send any of the issues prayed by the appellant to a Court of law for trial, the Orphans' Court assumed as matter of law, that the appellee could not renounce or waive her right of administration, unless upon proper summons or notice, or unless such renunciation be in writing.

The right of administration is one not resting in the discretion of the Orphans' Court, but is founded on positive law. *Nusz vs. Grove*, 27 *Md.*, 401; *Carpenter vs. Jones*, 44 *Md.*, 628. And in the protection of this right, the Code requires that the Court shall summon or notify

the parties thus entitled. *Article* 93, *secs.* 17–33, *of the Code.*

But yet this is a right which a party may renounce, or which he may lose by failing to make application for letters within proper time, or which by his own acts and conduct he may waive.

In providing that the right of administration may be renounced in writing, the Code does not mean that this right may not be lost or waived in any other manner. This was expressly decided in *Edwards vs. Bruce*, 8 *Md.*, 387. In that case, letters of administration were granted on the 17th of October, 1854, to Edwards, and on the 4th of June, in the following year, Bruce filed a petition alleging that he was a brother of the intestate and entitled by law to letters, that he was neither summoned or notified by the Orphans' Court before the grant of letters to Edwards, and prayed that the letters thus improvidently granted might be revoked.

Although he was not summoned, yet it appeared that more than five months prior to the filing of the petition, he had knowledge in fact of the granting of letters to Edwards. There is no provision in the Code requiring parties entitled to the right of administration to make application within a specified time, yet inasmuch as the Code does not require an executor named in a will to make application within four months after notice, the Court held upon the principles of analogy, that the time thus prescribed for executors, ought to apply to parties entitled to administration in other rights.

The whole purpose of our testamentary system, say the Court, is to "guard against all needless delay, and to secure as prompt and speedy settlements of the estates of deceased persons as practicable."

If then the right of administration secured by sec. 33, Art. 93 of Code is barred by *lapse of time*, upon principles of analogy to other sections of the Code, which require

executors named in a will to apply for letters within a specified time, with much greater reason ought Courts to hold that this right will be considered as waived, when at the instance and request of the party entitled, application has been made and letters have been granted to another person, and when such person in the discharge of the duties of the office, has after much labor and expense nearly completed the settlement of the estate.

To revoke letters of administration under such circumstances, would be a fraud upon the rights of an administrator, and a fraud perpetrated at the instance of the very person by the request of whom, the party thus injured assumed the duties of the office.

If the doctrine of estoppel, which will not permit one to repudiate his own declarations or conduct to the injury and prejudice of another, when upon the faith of such declarations or conduct others have been induced to act, is to be recognized at all, it seems to us that the facts set forth in the appellant's answer to the petition praying a revocation of his letters, if true, should estop the appellee from asserting the right of administration now claimed by her. If application for letters was made by the appellant at the instance and request of the appellee and her husband, and he had now nearly completed the settlement of the estate, every principle of good faith and fair dealing requires that the appellee should now be estopped from asserting the right of administration, to which she might otherwise have been entitled.

The appellant was, therefore, entitled to have the second issue prayed by him sent to a Court of law for trial.

It may be suggested that in order to avoid expense and delay, the determination of the question involved in this issue, might properly be left to the decision of the Orphans' Court. But this is a matter which addresses itself to the consideration of the parties in interest.

Being of opinion that the Orphans' Court erred in refusing to send this issue to a Court for trial, and in

MacKenzie, *et al. vs.* Renshaw.

revoking the letters of administration granted to the appellant, the order appealed from will be reversed and the cause remanded.

*Order reversed, and*
*cause remanded.*

(Decided 21st January, 1881.)