## HARRY E. SILVERWOOD *v.* JOSEPH JENKINS FARNAN

[No. 20, October Term, 1941.]

16

*Decided November 6, 1941.*

The cause was argued before SLOAN, DELAPLAINE, COLLINS, FORSYTHE, and MARBURY, JJ.

*J. Britain Winter,* for the appellant.

*C. Arthur Eby,* for the appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from an order of the Orphans' Court of Baltimore City, passed on May 19, 1941, revoking letters of administration on the estate of Margaret A. Farnan, also known as Daisy Collett Farnan, previously granted to Harry E. Silverwood, appellant, attorney for the collateral heirs, and granting such letters to the husband of the deceased, who is the appellee.

Joseph Jenkins Farnan was a resident of the City of Baltimore and when about twenty-two year of age moved to North Carolina where he was engaged in the cotton manufacturing business. In 1918, he married Margaret Avery Collett of Morganton, North Carolina, and after that time he and his wife lived at various times in New

York City, North Carolina and Baltimore City. In the year 1937, Mr. and Mrs. Farnan returned to Baltimore City to live. At the time of this appeal, he has been retired from business for about twelve years. On November 21, 1940, while Mrs. Farnan was visiting in Morganton, North Carolina, her former home, she died. It is admitted by all the parties to this cause that the domicile of Joseph Jenkins Farnan and of his wife Margaret Avery Farnan, was Baltimore City at the time of her death on November 21, 1940.

The appellee remained in North Carolina, where his wife was buried, until December 7, 1940, attending to her affairs. On that date, he returned to his boyhood home at 324 North Fulton Avenue in Baltimore, a joint interest in which had been conveyed to him by his sister in January, 1940. His sister also lived at that address and appellee states that since the death of his brother, about eighteen month before, he had been paying all bills for the maintenance of the home. He spent about nine days going through his wife's papers, a mass of records, and on December 16, 1940, he went to New York and stayed at a hotel until December 23, 1940, where he and his wife at one time lived. It is shown that he was assigned a room at that hotel from December 18, 1940, to December 24, 1940, and later from January 12, 1941, to February 12, 1941. He testified that he was very depressed and went to New York for a change and stayed until the Christmas holidays when he returned to Baltimore. After January 1, 1941, he resumed his work in Baltimore in checking up on his wife's affairs and found she had an estate of approximately $35,000, which consisted, among other things, of a mortgage on a house in Brooklyn, New York, stock of the American Telephone and Telegraph Company, Southern Railroad and International Mercantile Marine, several bank accounts in Brooklyn and in New York and several savings accounts in Baltimore. The majority of the property in her estate is located in New York. On January 12, 1941, he again went to New York,

which trip he said was for the purpose of attending to some of his personal affairs and also to investigate bank accounts of his wife in New York, which had been dormant for many years, and of which he had no previous knowledge, until the bank books were found among his wife's papers, and to get information on the mortgage which his wife held on property in Brooklyn. While there, he consulted a very close friend about his wife's affairs and was referred to an attorney, Mr. Darling, in New York City, whom he consulted and retained on January 25, 1941. He further stated that he did not want to rush in to get his wife's money, that he was undecided as to whether the estate should be administered in Maryland or in New York, and that his lawyer there was also undecided as to this matter. While in New York, he wrote to relatives in North Carolina endeavoring to locate the names of his wife's heirs at law and also made inquiry as to certain stocks owned by his wife in North Carolina. He returned to Baltimore on January 25, 1941, and remained two days. He then went to New York and returned to Baltimore for the day on Sunday, February 2, 1941. He went back to New York that evening and returned to Baltimore again on Saturday, February 7. After hearing that Mr. Silverwood had called to see him on February 6, he visited Mr. Silverwood's office on February 8, 1941. He was then told by the appellant that he thought he ought to tell him something that had happened which might shock him and he then advised appellee of the granting of letters to appellant in Maryland on the preceding day.

Mr. Silverwood had been employed by the collateral heirs of Mrs. Farnan in North Carolina on January 13, 1941, through lawyers there. On January 18, 1941, appellant wrote a letter to Mr. Farnan at 324 North Fulton Avenue, advising him as to his employment and asking appellee to get in touch with him within a few days. Not having received a reply, he called at 324 North Fulton Avenue on January 25, and as a result of information

received there, on January 28 he wrote appellee in New York asking for advice as to what estate was left by deceased and what steps, if any, had been taken in connection with the administration of the estate. After appellee received these letters, he states the reason he did not go to see Mr. Silverwood was because he did not know him and did not think there was any rush about the matter and he gave Mr. Silverwood's letters to Mr. Darling, his attorney in New York. Appellant communicated with his clients in North Carolina and received instructions to take out letters of administration in Maryland. He made another trip to the neighborhood of appellee's home, inquiring about him, on February 6, after he had heard from Mr. Farnan's New York attorney. On February 7, 1941, he found that the deceased had an account of $3,500 at the Eutaw Savings Bank and the same day he appeared before the Orphans' Court of Baltimore City, explained the facts of the case to them, and applied for letters of administration on the estate of the deceased, which were granted that day without notice to the husband. After Mr. Farnan heard of this, he returned to New York on February 9 and consulted his attorney there, and on February 20, 1941, he filed a petition in the Orphans' Court of Baltimore City asking for his appointment as administrator of his wife's estate and that the grant of letters to Harry E. Silverwood be revoked. The Orphans' Court passed an order granting this petition after testimony in open court, and ruled that the costs be paid by the estate of the deceased. From this order the appellant appealed.

The surviving husband is preferred in the granting of letters of administration upon the wife's estate. Article 93, Section 20; *Ward v. Thompson*, 6 Gill & J. 349, 350, at page 356. It is provided by Code, 1939, Art. 93, Secs. 32 and 33, both first enacted in 1798:

"32. If there shall be neither husband, nor wife, nor child, nor grandchild, nor father, nor brother, nor sister, nor mother, or if these be incapable, or decline, or refuse to appear on proper summons or notice, or if other re-

lations and creditors shall neglect to apply, administration may be granted at the discretion of the court."

"33. It shall not be necessary to give notice to a party entitled to administration if he be out of the State, nor shall it be necessary to summon or notify collateral relations more remote than brothers and sisters of the intestate, in order to exclude them from the administration; and no relations, except a widow, child, grandchild, father, brother, sister or mother shall be considered as entitled unless they shall apply for the same."

The primary question for our decision is whether the appellee was "out of the State" in the meaning of the statute at the time letters of administration were granted to the appellant. This question is further narrowed by the statement by the appellant in his brief at page 17, "Of course, the appellant does not contend that if a person primarily entitled to letters of administration were out of the State on a brief visit, he would not be entitled to notice, but he does contend that where the circumstances are such as to show that such person was out of the State and had no intention of returning except on 'visits,' he clearly is not entitled to notice."

The appellant contends because the distribution to the appellee would be greater under the New York law than under the Maryland law, that Farnan contemplated administration in New York and was, therefore, "out of the State." He stresses a letter written January 29, 1941, by Mr. Darling, the attorney for the appellee, to Mr. Silverwood in reply to his letter of January 28, 1941, to appellee, in which Mr. Darling stated among other things that he had been employed by Mr. Farnan "to represent him in this estate and had instructed him to apply for the issue of letters of administration to him as soon as possible." There is nothing in this letter to show that such administration was contemplated in New York State rather than in Maryland and the appellant testified that at the time that letter was written, that neither he nor his attorney had decided where letters of administration

should be applied for. Appellant further stresses the fact that before going to New York, the appellee changed the addresses on two bank accounts of the deceased to New York City and also changed the addresses on two of his own accounts in the same way. The appellee says that this was an additional address given the banks while he was in New York and that there were no instructions to strike out the old addresses on these accounts. There is no evidence to contradict this statement. The appellee had three other savings accounts in Baltimore City on which no change was made in the address. The appellant also argues that because the only checking account of the appellee was in the Guaranty Trust Company of New York, that this is evidence of his intention that he did not expect to return to Maryland except on visits. It is shown, however, that the appellee had that account in the same bank in New York for twenty-five years.

It is further urged by the appellant that on account of the delay in applying for letters that appellee forfeited any right which he had to notice and gives as his authority the cases of *Edwards v. Bruce,* 8 Md. 387, and *Pollard v. Mohler,* 55 Md. 284. It is true as stated therein that a party may lose the right of administration by failure to make application within the proper time, and also as said in those cases, the whole purpose of our testamentary laws is to "guard against all needless delay, and to secure as prompt and speedy settlements of the estates of deceased persons as practicable." This contention of appellant as to delay cannot be sustained in this case as during the time between the death of the decedent and the grant of letters appellee was engaged in ascertaining the assets of the estate and in locating the heirs and in seeking legal information. The delay has not been shown to be unreasonable and such as to forfeit his right to administration in view of all the circumstances, and no injury has thereby enured to the estate according to the evidence before us. Throughout this case, appellant has strenuously contended that the reason he applied for let-

ters of administration was to prevent the granting of those letters in New York State and to assure the administration in Maryland. The purpose has been accomplished by the appellant.

Appellant argues that the notice provided for in section 32, supra, is notice by legal process and gives as his authority the case of *Mason v. Union Mills Co.*, 81 Md. 446, 32 A. 311, 29 *L. R. A.* 273, 48 *Am. St. Rep.* 524, in which this Court said that the test to be applied in interpreting the words "out of the State," as used in Article 57, Section 5 of the Code, was whether or not the person could be reached by process. From the facts in the instant case, on account of the amount of time spent by the appellee in Maryland, it appears that he could have been reached by process. Furthermore, Section 32, supra, provides for "proper summons or notice."

The further contention in strenuously made that because the word "husband" is omitted in section 33, supra, that a husband is not entitled to notice. We do not find this contention tenable. *Hewitt v. Shipley*, 169 Md. 221, 181 A. 345. There is no contention that appellee was incapable or declined. The appellant being in no way related to the deceased, the only power which the Orphans' Court had to appoint him was by virtue of Article 93, Section 32, supra, which distinctly provides for proper summons or notice to the husband. *Smith v. Young*, 5 Gill 197, 205; *Georgetown College v. Browne*, 34 Md. 450, at pages 455 and 456.

The Orphans' Court had power to revoke letters of administration improvidently granted. *Dalrymple v. Gamble*, 66 Md. 298, 306, 7 A. 683, 8 A. 468. Without further commenting on the testimony, it is admitted that appellee was domiciled in Maryland at the time of his wife's death on November 21, 1940, and his furniture was in Maryland, part in storage and part at his Fulton Avenue home. He had Maryland license tags on his car for the past four years and paid Maryland State income tax for the years 1938, 1939 and 1940. Appellee testified that

his home is in Baltimore, that he had no intention of going back to New York except at times when the spirit moved him, as he was retired. The Orphans' Court had the witnesses before them and observed their demeanor when testifying and had more opportunity to judge as to the value of the testimony. *Oertel v. Oertel,* 145 Md. 177, 125 A. 545; *Jacobs v. Jacobs,* 170 Md. 405, 185 A. 109; *Bortner v. Lieb,* 146 Md. 530, 126 A. 890; *Farmers' Milling & Grain Co. v. Urner,* 151 Md. 43, 134 A. 29; *McClees v. McClees,* 160 Md. 115, 152 A. 901. In the case of *Owings v. Bates,* 9 Gill 463, this Court said at page 467: "But without any such agreement the appellee was the party entitled to this administration, and could only have been excluded, upon the representation or impression of an indefinite absence from the State. Such, however, was not the fact, as is indicated by her immediate return in the same month of January; and under all these circumstances the grant of letters to the appellant was premature and improvident." We quote in the case of *Pollard v. Mohler, supra,* 55 Md., at pages 288 and 289: "The right of administration is one not resting in the discretion of the Orphans' Court, but is founded on positive law. *Nusz v. Grove,* 27 Md. 391, 401; *Carpenter v. Jones,* 44 Md. 625, 628. And in the protection of this right, the Code requires that the court shall summon or notify the parties thus entitled." *Horton v. Horton,* 157 Md. 127, at page 132, 145 A. 355. This right of administration is a statutory right conferred on the husband of a deceased wife which should not be lightly disregarded. It cannot be concluded that the appellee, the husband of the deceased, was "out of the State" on February 7, 1941, as contemplated by the statute. For the reasons herein given, the order of the Orphans' Court of Baltimore City revoking letters of administration to appellant and granting them to the husband, the appellee, should be affirmed.

*Order affirmed, costs to be paid by the estate of the deceased.*